Margie Gail **DURKEE**; Michael Earl Durkee; Jackie Newton, Guardian Ad Litem on behalf of C.D.; Barney Durkee; Barbara Durkee, Timothy Cable, Guardian Ad Litem on behalf of D.B., a minor; Camelia Buchanan; and Kenneth Buchanan, Plaintiffs,

v.

**C.H. ROBINSON WORLDWIDE, INC.;** C.H. Robinson Company; Geologic Solutions, Inc.; Xata Corporation; N & W Holdings, LLC; PeopLease Corporation; Coretrans, LLC; Domtar Paper Company, LLC; d/b/a Domtar Corporation; Domtar Industries, Inc.; Domtar, Inc.; and Domtar Corporation, Defendants.

Civil Case No. 1:09cv449.

United States District Court,
W.D. North Carolina,
Asheville Division.

Jan. 28, 2011.

Ruth Campbell Smith, Crumley and Associates, Robert B. Long, Jr., Steve Ray Warren, Asheville, NC, for Plaintiffs.

Amy Elizabeth Fitzgerald, Cranfill, Sumner & Hartzog, LLP, Charlotte, NC, Dana H. Hoffman, Young Moore and Henderson, Raleigh, NC, Ann–Patton Hornthal, Wyatt S. Stevens, Roberts & Stevens, P.A., Wilburn Oscar Brazil, III, Cogburn & Brazil, P.A., Brady James Fulton, Northup, McConnell & Sizemore, Isaac Noyes Northup, Jr., Northup & McConnell, PLLC, Asheville, NC, David Erik Albright, Smith Moore LLP, Greensboro, NC, Casper Fredric Marcinak, III, Robert D. Moseley, Jr., Smith Moore Leatherwood LLP, Greenville, SC, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

MARTIN REIDINGER, District Judge.

**THIS MATTER** is before the Court on the following:

1. Defendants Geologic Solutions, Inc.'s and Xata Corporation's Rule 12(b)(6) Motion to Dismiss [Doc. 25];

2. Defendants Geologic Solutions, Inc.'s and Xata Corporation's Rule 12(b)(6) Motion to Dismiss the Cross–Claims for Contribution and Indemnification Asserted against Them by Defendant Peoplease Corporation [Doc. 39]; and

3. Defendants Geologic Solutions, Inc.'s and Xata Corporation's Rule 12(b)(6) Motion to Dismiss the Cross–Claims for Contribution and Indemnification

Asserted against Them by the Domtar Defendants [Doc. 60].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge Dennis L. Howell was designated to consider the motions to dismiss and to submit recommendations for their dispositions.

On May 26, 2010, the Magistrate Judge entered a Memorandum and Recommendation in which he recommended that each of the three motions be granted. [Doc. 65]. The Plaintiffs timely filed objections.

## PROCEDURAL & FACTUAL BACKGROUND

This action was initiated on December 16, 2009.[1] [Doc. 3]. In the Complaint, it is alleged that on the morning of July 1, 2008, Camelia Buchanan (Buchanan) was driving a 2002 Ford car in which Margie Durkee and two minor children, D.B. and C.D., were front seat passengers.[2] [Id., at 5]. Buchanan slowed the car when she approached a highway work zone on Interstate 40 in Buncombe County. [Id.]. Carroll Jett, who was driving a 2007 Volvo tractor trailer truck in the same direction, failed to slow his vehicle allegedly because he was distracted by a texting system inside the truck. [Id.]. As a result, he drove the truck into and over the 2002 Ford resulting in serious injury to the individuals inside the car. [Id.]. The Complaint alleges that Jett was negligent, grossly negligent, careless and reckless in numerous manners. [Id.].

The Defendant Geologic Solutions, Inc. (Geologic) is a Delaware corporation which was acquired by Defendant Xata Corporation (Xata), a Minnesota corporation, prior to the time of the accident. [Id., at 3]. Inside the tractor trailer truck being operated by Jett was a text messaging system which allowed Jett to receive text messages while driving.[3] [Id., at 13]. The system was manufactured by Geologic which is alleged to be a manufacturer pursuant to N.C. Gen.Stat. § 99B–1.[4] [Id., at 23]. In the Complaint, it is alleged that Geologic

> failed to exercise reasonable care and was negligent in that it manufactured the Geologic texting system described herein so that the settings on said system could be adjusted to where the operator could send or receive text messages while traveling at Interstate highway speeds. [I]t was foreseeable by Geologic ... and/or Xata ... that the tractors in which the texting sys-

---

1. This case is one of six cases pending in this Court, all of which stem from a motor vehicle accident in July 2008. In *Durkee, et al. v. Jett, et al.*, Civil Case No. 1:08cv429, the Court consolidated four of the actions and stayed the case. When this case was filed, additional plaintiffs and defendants were added and Defendant Jett was dropped from the action. In July 2010, the sixth action was filed on behalf of the estate of another individual injured during the accident who later died. *Bailey v. Jett, et al.*, Civil Case No. 1:10cv144.

2. This may be a typographical error since the allegation is that four people were in the front seat of the car.

3. Plaintiffs do not allege that Jett responded to or sent any text messages with this system.

The particular allegation regarding the use of the system reads that the "text messaging system ... allowed Jett to both receive messages while operating a heavily loaded tractor trailer on Interstate highway [sic] at Interstate highway speeds, and further, during the operation of said text messaging system, was likely and forseeable to distract him in its operation." [Doc. 3 at 13 ¶ 67]. Nowhere do Plaintiffs allege, however, that Jett was actually using the texting system at the time of the accident, [*see id.* at 12–13, 23–24], only that he was, in some unspecified manner, "distracted by the texting system." [*Id.* at 5 ¶ 23].

4. The Complaint contains an incorrect citation to N.C. Gen.Stat. § 99(b)(1).

tems would be mounted and used would be carrying heavy loads while traveling at Interstate highway speeds.

Geologic ... and/or Xata ... knew, or in the exercise of reasonable care should have known, that drivers of tractor trailers, carrying heavy loads while traveling at Interstate highway speeds, would become distracted if a text message was sent to them and the system had been set to where the driver could review the text message while traveling at Interstate highway speeds. [T]he settings on the Geologic texting system, [at] the time and place of [the] accident, were made in accordance with the instructions or specifications of the manufacturer[.] [A]t the time the Geologic Texting system left the control of the manufacturer[,] the manufacturer unreasonably failed to adopt a safe, practical, feasible, and otherwise reasonable alternative design that could have been reasonably adopted and it would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product, in that Geologic texting systems could have been designed to where the system would only operate to where a driver could either send or receive messages while stopped.

[*Id.*, at 23–24]. It is also alleged that Geologic acted unreasonably pursuant to N.C. Gen.Stat. § 99B–6(b) because the risk of harm associated with the design of the product made it unreasonable and Geologic was likely aware that the product users would be long haul truckers on interstate highways carrying heavy loads. [*Id.*].

Defendant Peoplease Corporation (Peoplease) asserted cross-claims against Geologic and Xata for contribution and indemnification. [Doc. 28, at 32–33]. Defendants Domtar Paper Company, LLC, Domtar·Industries, Inc., Domtar,

Inc. and Domtar Corporation (Domtar Defendants) also asserted cross-claims against Geologic and Xata for contribution and indemnification. [Doc. 55, at 25–27].

The Court's review of the docket shows that Geologic and Xata did not file an answer but instead moved to dismiss the claims against them for failure to state a claim upon which relief may be granted. [Doc. 25]. Geologic and Xata then moved to dismiss the cross-claims on the same grounds as those stated with regard to the Plaintiffs' claims. [Doc. 39; Doc. 60]. The Magistrate Judge concluded that the Plaintiffs had failed to state claims against Geologic and Xata and recommended that the motion be granted. That recommendation rendered the cross-claims futile and so he recommended that they be dismissed as well.

## STANDARD OF REVIEW

■ A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. § 636(b). "Parties filing objections must specifically identify those findings objected to." *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987), *overruled on other grounds Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415(5th Cir.1996). If a party makes only general objections, *de novo* review is not required. *Wells v. Shriners Hospital*, 109 F.3d 198, 200 (4th Cir.1997)(boilerplate objections will not avoid the consequences of failing to object altogether). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed find-

ings or recommendations *to which objection is made." United States v. Midgette*, 478 F.3d 616, 621 (4th Cir.2007), *certiorari denied* 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007) (emphasis in original).

 Likewise, merely reiterating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant *de novo* review. *Id.; Veney v. Astrue*, 539 F.Supp.2d 841, 846 (W.D.Va. 2008). "Allowing a litigant to obtain *de novo* review of [the] entire case by merely reformatting an earlier brief as an objection 'mak[es] the initial reference to the magistrate useless.'" *Id.* In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Midgette*, 478 F.3d at 622.

The Plaintiffs' objections exceed the twenty-five page limit stated in the Local Rules. *Rules of Practice and Procedure of the United States District Court for the Western District of North Carolina*, Rule 7.1(D). Counsel advises that it is not clear whether that limit applies to objections to a Memorandum and Recommendation. [Doc. 67, at 4]. The page limit, however, does in fact apply to objections. While the Court has not stricken the pages in excess of the limit, it is noted that the Objections are twice as long as the Memorandum and Recommendation. In the first seven pages, counsel sets out summaries of the objections to follow, which do little to assist the Court in addressing the objections. Likewise of little assistance to the Court are the objections raised that appear to be more in the nature of a semantic dispute with the Magistrate Judge as to his use of language than true objections to the substance of his recommendation or his underlying reasoning. Although this Court has conducted a *de novo* review, this opin-

ion is limited to specifically stated objections. Arguments extraneous to the issues raised in those objections are not addressed herein.

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, when accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ── U.S. ──, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.2009), *quoting Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>
> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,' " as required by Rule 8.... [E]ven though Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

*Id., quoting Twombly,* 550 U.S. at 555, 557, 127 S.Ct. 1955 and *Iqbal,* 129 S.Ct. at 1950.

The Court notes that in ruling on the objections to the Memorandum and Recommendation, it has not considered any matters outside the pleadings.

## DISCUSSION

In North Carolina, a products liability action includes "any action brought for or on account of personal injury ... caused by or resulting from the manufacture, ... [and/or] design, ... of any product." N.C. Gen.Stat. § 99B–1(3). The statute defines a manufacturer as "a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product ... prior to its sale to a user or consumer[.]" N.C. Gen.Stat. § 99B–1(2). Geologic and Xata are manufacturers. The Plaintiffs have labeled the claim against Geologic and Xata as one for products liability based on negligent manufacture and design. [Doc. 3, at 23–24].

■ "Under North Carolina law, a products liability action based upon negligence requires the plaintiff to prove the following essential elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Smith v. Wyeth–Ayerst Laboratories Co.,* 278 F.Supp.2d 684, 706 (W.D.N.C.2003). The products liability statute also provides:

No manufacturer of a product shall be held liable in any product liability action for the inadequate design or formulation of the product unless the claimant proves that at the time of its manufacture the manufacturer acted unreasonably in designing or formulating the product, that this conduct was a proximate cause of the harm for which damages are sought and also proves ... [that] at the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design ... that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.

N.C. Gen.Stat. § 99B–6(a).

■ The central focus of the Memorandum and Recommendation is that Defendants Geologic and Xata owed no legal duty to the Plaintiffs to anticipate the misuse of their texting system in a manner as would cause injury to the Plaintiffs as nonusers. Plaintiffs have objected to this conclusion.

■■ The duty owed by a defendant to a plaintiff is determined by the relationship subsisting between them. *Kientz v. Carlton,* 245 N.C. 236, 240, 96 S.E.2d 14, 17 (1957). "[A] manufacturer is under a duty to those who use his product to exercise that degree of care in its design and manufacture that a reasonably prudent man would use in similar circumstances." *McCollum v. Grove Mfg. Co.,* 58 N.C.App. 283, 287, 293 S.E.2d 632 (1982), *affirmed* 307 N.C. 695, 300 S.E.2d 374 (1983). It is undisputed that the Plaintiffs were not the users of the product; they had no relationship with Geologic and Xata, contractual or otherwise. *Williams v. Cingular Wire-*

*less,* 809 N.E.2d 473, 477 (Ind.Ct.App.2004) *appeal denied,* 822 N.E.2d 976 (Ind.2004).

The Magistrate Judge succinctly stated the legal issue as it applies to the facts alleged herein. In light of the absence of any legal relationship between the Plaintiffs and Geologic and Xata, the Magistrate Judge found it significant that

> there is no allegation that the communications device malfunctioned in any way. Rather, the only allegations are that the end user used the device when he should have been watching the road, and Geologic and Xata should have anticipated such misuse and designed it in a manner which prevented it from being used while the truck was moving.... [T]hat would impose a duty on manufacturers to anticipate misuse of a product and design such a product to prevent misuse. If such a legal duty to anticipate misuse were to be imposed on manufacturers, no vehicle would be capable of traveling above the speed limit, car ignitions would all be equipped with ignition interlock devices, and guns would not be sold to persons with poor judgment.

[Doc. 65 at 7].

The Plaintiffs argue for an extension of Defendants' legal duty in this case, claiming they are reasonably foreseeable victims injured by a reasonably foreseeable harm. Specifically, they claim that (1) the texting system, as designed and manufactured, was unreasonable; (2) this design was the proximate cause of the Plaintiffs' injuries; *i.e.,* by causing the accident; and (3) there was an alternate design which would not have allowed Jett to read text messages unless he stopped the truck. Thus, the argument goes, Geologic and Xata should have foreseen that this alternate design would avoid injury to third persons like the Plaintiffs and should have adopted it.

The Court is compelled to follow the Magistrate Judge's recommendation and

conclude as a matter of law that the facts alleged do not allow for the imposition of liability upon Geologic or Xata, notwithstanding the alleged design of the texting system. *See Williams,* 809 N.E.2d at 477–78. If manufacturers or designers of products had a legal duty to third parties to anticipate improper use of their products then no product that would potentially distract a driver could be marketed. Cellular telephones, GPS devices and even car radios would be the subject of suits such as this one. After all, cellular telephones are capable of being used for sending and receiving text messages while driving an automobile, just like the "texting system" at issue in this case. Moreover, the makers of firearms and even automobiles would have to try to account for the potential harm that their users might cause to third parties when using their products in a manner contrary to what was intended. Such a rule would turn products liability law on its head.

Plaintiffs respond by citing *Hairston v. Alexander Tank and Equipment Co.,* 310 N.C. 227, 311 S.E.2d 559 (1984). The plaintiff in that case was killed when he stopped by the side of the road after the tire on his car fell off and another vehicle hit him. The North Carolina Supreme Court held that both the mechanic who failed to tighten the tire immediately before the accident and the vehicle which hit the plaintiff proximately caused the accident. Plaintiffs claim that the Court held the negligence of the driver did not insulate the preceding negligence of the mechanic and compare it to this case. That misses the point of the Magistrate Judge's conclusions underlying his recommendation. It is not a question of whether Jett's negligence was an intervening cause, but whether the Plaintiffs have stated a claim for negligence on the part of Geologic and Xata. The Magistrate Judge concluded, and this Court concludes, that on the facts

alleged there was no duty upon Geologic and Xata, and thus these Defendants were not negligent. Therefore, no issue arises regarding concurrent or insulating causes. *Hairston* is simply inapposite to the facts pleaded herein.

Plaintiffs take repeated exception to the Magistrate Judge's characterization of Jett as having "misused" the texting system. Plaintiffs contend that, in fact, Jett was using the texting system in a manner for which it was designed and that therefore the design of the system constitutes negligence.[5] Plaintiffs further contend that Geologic and Xata were obligated to design a system that could be used only when the vehicle was stopped.

■ Plaintiffs' arguments are premised on the assumption that Jett's distracted and inattentive driving was a result of a design defect within the system. The fact, however, that using the system *could* result in a driver negligently operating his vehicle does not create any duty on the part of the manufacturer to protect third parties from a driver's improper use of the product. "[T]he duty owed by a manufacturer … does not require him to … protect against injuries resulting from the user's own patently careless and improvident conduct." *Kientz*, 245 N.C. at 241–42, 96 S.E.2d 14. The alleged accident in this case was caused by the driver's inattention, not any element of the design or manufacture of the system that has been alleged. *Id.; accord, Matthews v. Vlad Restoration Ltd.*, 74 A.D.3d 692, 904 N.Y.S.2d 391 (1st Dept.2010) (pedestrian distracted by cell phone conversation not brace on scaffold); *Wilfong v. L.J. Dodd Cont.*, 401 Ill.App.3d 1044, 341 Ill.Dec. 301, 930 N.E.2d 511 (2010), 401 Ill.App.3d 1044, 341 Ill.Dec. 301, 930 N.E.2d 511 (2010) (same); *Silber v. Motorola, Inc.*, 274 A.D.2d 511, 711 N.Y.S.2d 475 (2nd Dept. 2000), *leave to appeal denied* 96 N.Y.2d 704, 723 N.Y.S.2d 131, 746 N.E.2d 186 (2001) (driver distracted by cradle for cell phone; accident caused by driver being distracted and averting eyes from the road not by manufacture or design of phone and cradle).[6] The Plaintiffs' objections on this point are overruled.

■ Next, the Plaintiffs contend that the Magistrate Judge failed to forecast how the North Carolina Supreme Court would resolve the issue of whether Geologic and Xata owed a legal duty to non-users in this scenario. They cite *Isaacson v. Toyota Motor Sales*, 438 F.Supp. 1 (E.D.N.C.1976), in support of this proposition. The Fourth Circuit Court of Appeals much more recently stated, however,

> [S]itting in diversity, a federal court "should not create or expand [a] State's public policy." Moreover, "[a]bsent a strong countervailing federal interest, the federal court … should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law."

*Time Warner Entertainment–Advance/Newhouse Partnership v. Carteret–Craven Elec.*, 506 F.3d 304, 314 (4th Cir. 2007) (citations omitted). Existing prece-

---

**5.** There is, in fact, no allegation in the Complaint that Jett was actually using the system at the time of the accident. At best, it can be inferred from the Plaintiff's allegations of causation that Jett was distracted by the system when the accident occurred. Assuming these allegations to be true, the court concludes that these facts do not establish a legal duty on the part of Geologic and Xata to protect Plaintiffs from Jett's inattentiveness.

**6.** In so holding, the Court rejects as well the Plaintiffs' argument that the Magistrate Judge found Jett's negligence to be insulating negligence. The design and manufacture of the texting system was not negligent because there was no attendant duty. Thus if Jett was negligent, such negligence is not intervening.

dent from the appellate courts of North Carolina support the legal conclusion that there is no duty to design or manufacture a product so as to anticipate that a user will misuse the product to harm another. This Court need not "elbow its way into" any controversy about public policy, but only follow that precedent.

Plaintiffs claim that in concluding that there was no duty to them that the Magistrate Judge simply disbelieved the factual allegations of the Complaint, which is not allowed under *Twombly.* This objection stems from the Magistrate Judge's observation that the practice of texting while operating a vehicle is obviously dangerous to the operator as well as to others. Plaintiffs argue that having made this observation, the Magistrate Judge could not then conclude anything other than that Geologic should have foreseen such danger. [Doc. 67, at 13]. The Magistrate Judge, however, refutes this objection on the very next page of the Memorandum and Recommendation where he concludes that "simply because a product is placed in the stream of commerce *does not place a legal duty on the manufacturer for careless or improper use;* rather the risk of harm has to be both unreasonable and foreseeable." [Doc. 65, at 12] (emphasis added) (*citing Estate of Mullis v. Monroe Oil Co., Inc.,* 349 N.C. 196, 505 S.E.2d 131 (1998)).

> [T]he threshold question is whether plaintiffs successfully allege defendant[s] had a legal duty to avert the [accident caused by Jett]. No legal duty exists unless the injury to the plaintiff was foreseeable and avoidable through due care. Whether a plaintiff's injuries were foreseeable depends on the facts of the particular case. Unlike many cases involving [ ] negligence claims, here plaintiffs desire damages from defendant[s] for the actions of [a] third person[.]

*Stein v. Asheville City Bd. of Educ.,* 360 N.C. 321, 626 S.E.2d 263, 267–68 (2006), *rehearing denied* 360 N.C. 546, 635 S.E.2d

58 (2006). The Magistrate Judge concluded that Geologic and Xata had no legal duty to the Plaintiffs because they were not users of the product at issue and the Plaintiffs' alleged harm stemmed from the misuse of the product by the user. This was a proper statement of North Carolina law, not a statement of disbelief in the allegations of the Complaint. This objection is overruled.

The Plaintiffs also object to the standard of review applied by the Magistrate Judge, arguing that it was too stringent as applied to a negligence claim. The Magistrate Judge, they argue, went "further than directed by *Twombly* and *Iqbal,* to in effect allow the pleading tail to wag the substantive law dog." [Doc. 67, at 7]. In a negligence case, they claim, the plaintiff is not required to allege each element of a tort claim. In support, they state that the

> Plaintiffs have alleged a specified date and time and place where the alleged negligence occurred, the mechanism of the negligence, even to the point of noting that this texting device was mounted within the tractor-trailer itself. Plaintiffs go on to allege a *feasible alternative design.*

*[Id.,* at 8](emphasis in original).

This argument is based on the Supreme Court's citation in *Twombly* to the standard form in the Federal Rules of Civil Procedure for negligence complaints, a citation meant only to convey that "conclusory statements are not barred entirely from federal pleadings." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir.2008), *citing Twombly,* 127 S.Ct. at 1977.

> The [*Twombly* ] Court noted that a complaint of negligence in compliance with [the form] provides sufficient notice to defendants, even though it alleges only that the defendant, on a specified date, "negligently drove a motor vehicle against plaintiff who was then crossing

[an identified] highway." To survive dismissal at this stage, the complaint need not state the respects in which the defendant was alleged to be negligent (*i.e.*, driving too fast, driving drunk, etc.) [.] In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense.

*Id.*, at 1084–85.[7]

The Magistrate Judge, however, did not conclude that the Plaintiffs had failed to state a negligence claim because the Complaint did not contain sufficient allegations of the elements of negligence. His recommendation is based on the Plaintiffs' failure to allege facts sufficient to show that Geologic and Xata, as the manufacturers of the texting system, owed a legal duty to the Plaintiffs. He also concluded that the harm alleged was not reasonably foreseeable and that the manufacture or design of the system was not the proximate cause of the injury. In other words, despite the allegations in the Complaint, which are taken as true for the purposes of this motion, the Plaintiffs have failed to state a cognizable legal claim.

■ The Plaintiffs admit that they were not users of the texting system. Based on that fact, the Magistrate Judge concluded as a matter of law that North Carolina law does not recognize a duty owed by these Defendants to the Plaintiffs. The Magistrate Judge properly applied the *Twombly* standard of review. *Bruno v. Metropolitan Transp. Authority*, 344 Fed. Appx. 634, 636 (2nd Cir.2009) (noting that even after *Twombly* in order to state a negligence claim a plaintiff must show duty owed); *accord, Farash*, 337 Fed. Appx. at 9; *Gilbert v. Outback Steakhouse*

*of Florida, Inc.*, 295 Fed.Appx. 710, 715 (5th Cir.2008) ("[W]hile the 'nature of the claim'—a negligence action-is apparent from the complaint, it cannot be said that Gilbert provided 'fair notice' of the 'grounds' on which the claim rests—the duty owed by OSF as the premises owner to its invitees."); *Ellis v. Advanced Technology Services, Inc.*, 2010 WL 3526169 (M.D.Ala.2010); *Wheeler v. Prison Health Services, Inc.*, 2010 WL 3489405 (E.D.Pa. 2010); *Walters v. Fidelity Mortg. of CA*, 730 F.Supp.2d 1185 (E.D.Cal.2010). Even after *Twombly*, a "court need not … accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Errivares v. Transportation Sec. Admin.*, 2010 WL 610774 (D.Md.2010) (finding plaintiff failed to plead duty owed and dismissing under *Twombly/Iqbal*).

In the next portion of the objections, the Plaintiffs claim that the Magistrate Judge failed to accept the facts alleged in the Complaint as true. In support of this position, counsel recited various factual allegations contained within the Complaint and stated that "the consequences of deeming Plaintiffs' factual allegations" as true results in the "Defendants" admitting those allegations in their "Answer." [Doc. 67, at 8–9]. Those "admissions," it is argued, require denial of the motion to dismiss. Counsel even provided a chart within the objections showing each factual allegation and the purported deemed "Admission" from the "Answer." [*Id.*].

Geologic and Xata, however, have not filed an answer; they instead moved to dismiss on the ground that there is no legal duty owed to these Plaintiffs, the

---

7. However, the "Supreme Court has not yet excluded complaints asserting state law tort claims from the reach of its ruling [in *Twombly*.]" *Stanley v. Star Transport, Inc.*, 2010 WL 2079731 (W.D.Va.2010); *Farash v. Conti-* *nental Airlines, Inc.*, 337 Fed.Appx. 7, 9 (2nd Cir.2009) (applying *Twombly* and *Iqbal* to negligence cause of action and finding complaint inadequate).

harm at issue was not reasonably foreseeable and the injury was not proximately caused by their product design. By interposing a motion to dismiss, Geologic and Xata clearly contested whether the facts as alleged have stated a legal claim.

This very peculiar manner of presentation is continued in the next portion of the objections in which Plaintiffs' counsel recites a "hypothetical trial" with questions and answers fabricated entirely by counsel. The objection concludes with the question, "If such was the evidence[ ] adduced upon cross examination, and the defendants moved for directed verdict, would the Court grant it?" In what manner this objection relates to the Memorandum and Recommendation is not explained beyond the strained argument that this Court is required to accept every factual allegation in the Complaint as deemed admitted by the Defendants prior to their having filed an answer. This argument simply ignores the issue raised by the motion to dismiss.

Counsel next lifts one quotation from the Memorandum and Recommendation and argues that it proves the Magistrate Judge imposed a higher standard than required by *Twombly.* According to the Plaintiffs, the Magistrate Judge imposed a "probability requirement at the pleading stage." [Doc. 67, at 11].

In discussing "what is reasonably foreseeable in the context of a products liability action," the Magistrate Judge quoted *Kientz v. Carlton,* 245 N.C. at 242, 96 S.E.2d 14:

> In North Carolina, a manufacturer bears responsibility for consequences which are probable, and which could reasonably have been foreseen, according to ordinary and usual experience, but not for consequences which are merely possible according to occasional experience.

[Doc. 65, at 9] (citations omitted). Applying that standard to the facts alleged, the Magistrate Judge noted:

> This alleged failure of the truck driver to operate the vehicle with due care for his own safety as well as the safety of others cannot, however, be ascribed to a company that manufactures a communications device as use of the device without due care, while certainly possible, is not probable, the results of which could not have been reasonably foreseen.

[*Id.,* at 11].

The Magistrate Judge, however, wrote this portion of the recommendation in the context of discussing the North Carolina definition of "reasonably foreseeable." It did not relate to the pleading standard applied to the Complaint. This objection, therefore, is overruled.

The remaining objections relate to the Magistrate Judge's distinction of cases cited by the Plaintiffs. The Court has reviewed each case as well as the Magistrate Judge's discussion and finds that the objections are not well taken. The Court has also reviewed, and rejected, the cases cited by the Plaintiffs during oral argument of the motion before the Magistrate.

## CONCLUSION

While Plaintiffs' counsel has gone to great lengths to argue for an extension of North Carolina's products liability law, the Court accepts the recommendation of the Magistrate Judge and concludes that the law in North Carolina does not impose a duty on the manufacturer of a product to design it in such a manner that the user thereof is incapable of being distracted by its use while driving.[8] *Kientz,* 245 N.C. at

---

8. The Court rejects the Plaintiffs' reliance on *Adams v. Morris,* 584 S.W.2d 712 (Tex.Civ. App.1979), a case which did not involve products liability. In that case, a passenger, riding in his own car while it was driven by another person, distracted the driver. The court there found, applying Texas law, that

240, 96 S.E.2d 14; *Winters v. Lee*, 115 N.C.App. 692, 696, 446 S.E.2d 123 (1994), *review denied* 338 N.C. 671, 453 S.E.2d 186 (1994) (" 'One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold [defendants] bound in like manner to guard against what is unusual and unlikely to happen or what, ... is only remotely and slightly probable.' ") (citations omitted). The Court therefore rejects Plaintiffs' arguments and dismisses Geologic and Xata from this action.

Finally, the Court notes that the Defendants N & W Holdings, LLC, Coretrans, LLC, and Domtar Paper Company, LLC are each alleged to be a limited liability company. A limited liability company is a citizen of all states in which its constituent members are citizens. *Carden v. Arkoma Associates*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). Courts have an affirmative duty to question subject matter jurisdiction even when the parties have not done so. *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215 (4th Cir.2001); *Plyler v. Moore*, 129 F.3d 728, 732 n. 6 (4th Cir.1997), *certiorari denied* 524 U.S. 945, 118 S.Ct. 2359, 141 L.Ed.2d 727 (1998); 28 U.S.C. § 1447(c)("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). No party has disclosed in the pleadings the states of citizenship of the constituent members or

partners of these Defendant and therefore each will be required to do so in order for the Court to determine whether it has subject matter jurisdiction over the remaining claims.

## ORDER

**IT IS, THEREFORE, ORDERED** as follows:

1. The Plaintiffs' objections [Doc. 67] to the Memorandum and Recommendation of the Magistrate Judge [Doc. 65] are **OVERRULED** and the recommendation of the Magistrate Judge is **ACCEPTED.**

2. Defendants Geologic Solutions, Inc.'s and Xata Corporation's Rule 12(b)(6) Motion to Dismiss [Doc. 25] is hereby **GRANTED** and these Defendants are hereby **DISMISSED** from the action with prejudice.

3. Defendants Geologic Solutions, Inc.'s and Xata Corporation's Rule 12(b)(6) Motion to Dismiss the Cross–Claims for Contribution and Indemnification Asserted against Them by Defendant Peoplease Corporation [Doc. 39] is hereby **GRANTED** and these claims are hereby **DISMISSED** with prejudice.

4. Defendants Geologic Solutions, Inc.'s and Xata Corporation's Rule 12(b)(6) Motion to Dismiss the Cross–Claims for Contribution and Indemnification

---

because the passenger retained the authority to direct and supervise the manner in which the car was driven and because the street contained warning signs that children were playing nearby, the passenger-owner of the car owed a duty to those children. Such comparison might be applicable to this case if Plaintiffs were claiming that Geologic and Xata owned the tractor trailer at issue, were in the vehicle with Jett and in some manner caused him to look at the texting system. Texas, however, appears to be unique in its holding. See, *e.g., Champion ex rel. Ezzo v.*

*Dunfee*, 398 N.J.Super. 112, 939 A.2d 825 (2008), *certiorari granted* 195 N.J. 420, 949 A.2d 849 (2008); *Akins, by and through Akins v. Hamblin*, 237 Kan. 742, 703 P.2d 771 (1985). Moreover, North Carolina has clearly rejected an argument that the passenger in a car driven by her husband, who was known to have seizures and who was driving with an expired license, was negligent for failing to prevent him from driving (i.e. "misusing" the vehicle). *Hinson v. Jarvis*, 190 N.C.App. 607, 660 S.E.2d 604 (2008), *review denied* 675 S.E.2d 366 (2009).

Asserted against Them by the Domtar Defendants [Doc. 60] is hereby **GRANTED** and these claims are hereby **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that on or before ten business days from entry of this Order, the Defendants N & W Holdings, LLC, Coretrans, LLC, and Domtar Paper Company, LLC shall file response disclosing the names and citizenships, if any, of all constituent members or partners, and, for any such constituent members or partners that are limited liability companies or partnerships, to identify the citizenships of the respective constituent members or partners until all such constituents are fully identified.

**IT IS SO ORDERED.**

## MEMORANDUM AND RECOMMENDATION

DENNIS L. HOWELL, United States Magistrate Judge.

**THIS MATTER** is before the court on Geologic Solutions, Inc.'s and Xata Corporation's Motion to Dismiss (# 25), Motion to Dismiss Cross–Claims for Contribution and Indemnification Asserted Against Them by PeopLease Corporation (# 39). Oral arguments were heard on such motions on April 20, 2010, at which plaintiffs submitted and argued case law that was not argued in its response. The court allowed moving defendants the opportunity to address such citations and arguments in a supplemental brief, which was filed May 4, 2010. In addition, such defendants filed their Rule 12(b)(6) Motion to Dismiss the Cross–Claims for Contribution and Indemnification Asserted Against Them By the Domtar Defendants (# 60) after the hearing. This motion is also ripe as the Domtar defendants did not respond to such motion within the time allowed.

The court having considered all the arguments and case law submitted, the undersigned is compelled to recommend that Geologic Solutions, Inc.'s and Xata Corporation's motions be allowed inasmuch as plaintiffs have failed to state a recognized cause of action under North Carolina law.

## FINDINGS AND CONCLUSIONS

### I. Background

The facts underlying this diversity action are both simple and tragic. Plaintiff Camelia Buchanan was driving westbound on Interstate 40 on the morning of July 1, 2008, in Buncombe County, North Carolina. Complaint, at ¶ 20. Ms. Buchanan's passengers on that included plaintiff Margie Durkee, and two minor children, on whose behalf claims have been made by their guardians *ad litem* herein. *Id.*

Not far behind, truck driver Carroll Jett (hereinafter "Jett") was also westbound, operating a tractor and loaded trailer. *Id.*, at ¶ 21. In the cab of the truck Jett was operating a communication system had been installed that was manufactured by defendant Geologic Solutions, Inc. (hereinafter "Geologic"). *Id.*, at ¶ 124. Such system allows the driver to receive text messages from a dispatcher while the vehicle is in motion. *Id.*, at ¶ 139.

Plaintiffs contend that Mr. Jett became distracted by the communications system, which required the driver to look away from the road to view the message, and while looking at the message Jett operated the fully loaded tractor-trailer into and over Ms. Buchanan's vehicle, which had slowed due to traffic and work-zone hazards. *Id.*, at ¶¶ 22–23. All four occupants of Ms. Buchanan's vehicle sustained serious injuries. *Id.*, at ¶¶ 49 & 146.

### II. Cause of Action Asserted Against Geologic and Xata

Plaintiffs' cause of action against Geologic and Xata sounds in products liability. Even though they did not purchase the

product, nor were they the end user, plaintiffs contend that these defendants owed them and the traveling public a duty to design such devices in a manner that would not cause distraction of the truck driver, and, in turn, avoid tragic accidents like the one underlying this action.

Specifically, plaintiffs allege in relevant part in support of their Fourteenth Cause of Action, "Products Liability—Manufacturer of Geologic Texting System," that:

(1) it was reasonably foreseeable by Geologic and Xata that the trucks in which the communications systems would be mounted would be carrying heavy loads while traveling at Interstate highway speeds;

(2) Geologic and Xata knew or should have known in the exercise of reasonable care that the drivers of tractor-trailers would become distracted and take their eyes from the roadway to view the displayed text message;

(3) Geologic and Xata had the duty to exercise reasonable care in the design and manufacture of the texting system so that messages would only be received (or, readable) while the vehicle was stopped; and

(4) Geologic's and Xata's failure to do so evidenced a conscious and intentional disregard of an indifference to the rights and safety of the traveling public, including the plaintiffs, which they knew or should have known was reasonably likely to result in injury, damage, or harm.

*Id.,* at ¶¶ 49, 99, 139, 140, 143, 145, 146.[1] Thus, the only claim against Geologic and Xata is a products liability negligence claim asserted under Chapter 99B–6 of the North Carolina General Statutes, alleging that plaintiffs were injured through the inadequate design of a texting device sold by such defendants.

## III. Motion to Dismiss: Rule 12(b)(6) Standard

Geologic and Xata have moved to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure. Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiffs could prove no set of facts which would support their claim and entitle them to relief. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court held that the "no set of facts" standard first espoused in *Conley, supra,* only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." *Id.,* at 563, 127 S.Ct. 1955. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.,* at 561, 127 S.Ct. 1955 (alteration in original).

Post *Twombly,* to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege facts in their complaint that "raise a right to relief above the speculative level." *Id.,* at 555, 127 S.Ct. 1955.

[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclu-

1. The undersigned has attempted to summarize the relevant contentions.

sions, and a formulaic recitation of the elements of a cause of action will not do....

*Id.* (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955. Instead, plaintiffs must now plead sufficient facts to state a claim for relief that is *"plausible* on its face." *Id.*, at 570, 127 S.Ct. 1955 (emphasis added).

While the Court was clear in *Twombly* that *Conley* was no longer controlling, see *Twombly,* 550 U.S. at 563, 127 S.Ct. 1955, and *Felman Production Inc. v. Bannai,* 2007 WL 3244638, at *4 (S.D.W.Va.2007), it again visited the Rule 12(b)(6) pleading standard in *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (May 18, 2009). In *Iqbal,* the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*, S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Id.* (citing *Twombly, supra;* emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.* This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a complaint falls short of the plausibility standard where plaintiffs plead "facts that are 'merely consistent with' a defendant's liability...." *Id.* While the court accepts *plausible* factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court

"need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP,* 213 F.3d 175, 180 (4th Cir.2000).

## IV. Discussion

### A. Introduction

The extension of products liability law offered by plaintiffs herein is appealing as it suggests that manufacturers of devices that distract drivers from the full-time job of driving be held liable for the injuries such drivers cause to others. Indeed, the court takes judicial notice that the local news is filled with stories of drivers, distracted with retrieving or sending text messages, injuring and killing themselves and/or others. However, a review of North Carolina decisions, as well as decisions of other jurisdictions, indicates that a cause of action does not lie for products liability negligence under Chapter 99B–6 against a product manufacturer for harm caused to third parties by an end user's misuse or poor judgment in the use of a product.

### B. Products Liability Under North Carolina Law

▇▇▇▇ In their Complaint, plaintiffs cite Chapter 99B–6(a) in support of their products liability claim against Geologic and Xata. That statute provides in pertinent part, as follows:

> No manufacturer of a product shall be held liable in any products liability action for the inadequate design or formulation of the product unless the claimant proves that at the time of its manufacture the manufacturer acted unreasonably in designing or formulating the product, that this conduct was a proximate cause of the harm for which damages are sought, and also proves one of the following:

·

(1) At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product. . . .

N.C. Gen. Stat. § 99B–6(a). The essential elements of a products liability claim based on negligence are: "(1) duty; (2) a breach of that duty; (3) causation; and (4) damages." *Smith v. Wyeth–Ayerst Labs. Co.,* 278 F.Supp.2d 684, 706 (W.D.N.C.2003). The duty of a manufacturer is clear under North Carolina law, which is

to use reasonable care throughout the manufacturing process, including making sure that the product is free of any potentially dangerous defect in manufacturing or design.

*Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.,* 138 N.C.App. 70, 530 S.E.2d 321, 326 (N.C.Ct.App.2000). Thus, the question in this case comes down to whether plaintiffs have alleged facts that create a legal duty these manufacturers owed to plaintiffs.

### C. Duty

 In North Carolina, "actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." *Huntley v. Howard Lisk Co., Inc.,* 154 N.C.App. 698, 573 S.E.2d 233, 236 (N.C.Ct.App.2002). Review of the Complaint reveals no allegations that any relationship existed between these plaintiffs and Geologic and Xata. Further, there is no allegation that the communications device malfunctioned in any way. Rather, the only allegations are that the end user used the device when he should have been watching the road, and that Geologic and Xata should have anticipated such misuse and designed it in a manner which prevented it from being used while the truck was moving.

The court can find no case law that would impose a duty on manufacturers to anticipate misuse of a product and design such a product to prevent misuse. If such a legal duty to anticipate misuse were to be imposed on manufactures, no vehicle would be capable of traveling above the speed limit, car ignitions would all be equipped with ignition interlock devices, and guns would not be sold to persons with poor judgment.

### D. Reasonably Foreseeable

Plaintiffs go to great lengths to describe the size and weight of tractor-trailers and the likelihood that a driver would be distracted by such communication device:

the Coretrans truck tractor trailer was unfit to operate safely given the ability of Jett to receive messages in said vehicle, weighing thousands of pounds, and traveling at Interstate highway speeds.

Compl., at ¶ 48;

Carroll Jett had on board the tractor, a text messaging system which allowed Jett to both receive messages while operating a heavily loaded tractor trailer on Interstate highway at Interstate highway speeds, and further, during the operation of said text messaging system, was likely and foreseeable to distract him in its operation.

*id.,* at ¶ 67, 573 S.E.2d 233;

it was foreseeable and likely that a major accident with a member of the public would occur while a driver of a tractor trailer was distracted by receiving text messages while traveling at Interstate

highway speeds and carrying heavy loads as was the case as alleged herein. *id.*, at ¶ 109, 573 S.E.2d 233;

a Geologic texting system which allowed text messages to be received while traveling at Interstate highway speeds while driving a heavily loaded tractor which, created an unreasonable risk of harm to the traveling public, including the plaintiffs, given the fact that it was foreseeable and likely that the driver would become distracted in looking at the texting system as was the case herein.

*id.*, at ¶ 124, 573 S.E.2d 233; and

it was foreseeable by Geologic Solutions, Inc. and/or XATA Corporation that the tractors in which the texting systems would be mounted and used would be carrying heavy loads while traveling at Interstate highway speeds.

*Id.*, at ¶ 139, 573 S.E.2d 233.

■ North Carolina case law is well settled at to what is reasonably foreseeable in the context of a products liability action. In North Carolina, a manufacturer bears

responsibility for consequences which are probable, and which could reasonably have been foreseen, according to ordinary and usual experience, but not for consequences which are merely possible according to occasional experience.

*Kientz v. Carlton*, 245 N.C. 236, 96 S.E.2d 14, 18 (N.C.1957).

Clearly, the court can take judicial notice of the growing problem of accidents caused by drivers who divert their attention from the road to send or retrieve text messages from their cell phones, who input data into GPS devices while driving, and some who even surf the net on their laptop while driving. Indeed, this court is aware, and takes notice, that equipping police cars with lap top computers mounted so that officers can receive data while driving is now standard. The court does not disagree with plaintiffs that using any data

entry or retrieval device while driving is dangerous to both the drivers and to other road users, regardless of the size of the vehicle being operated. Indeed, adjusting the radio and climate controls, or even talking to a passenger, can be risky activities. These situations beg the question, however, as to where does manufacturer responsibility end and the responsibility of the driver begin?

While the North Carolina Supreme Court in *Kientz* was written during a time when a factory AM radio was prevailing in-car automotive technology, the test of what is reasonably foreseeable by a manufacturer is equally applicable a half-century later. *Kientz* provides that courts are to distinguish the merely possible from the probable in determining what is reasonably foreseeable. While North Carolina courts have yet to apply such test in the context of texting drivers, other jurisdictions have. In *Williams v. Cingular Wireless*, 809 N.E.2d 473, 475–79 (Ind.Ct.App. 2004), *appeal denied*, 822 N.E.2d 976 (Ind. 2004), the court held that, as a matter of law, a cellular telephone company does not owe a duty to a third person injured by a driver who was distracted while talking on a cell phone. There, the appellate court reasoned that even when one assumes that use of the device contributed to the accident, the cellular company had no duty to the injured plaintiffs because there was no relationship between the wireless company that supplied the phone and the injured plaintiff, the accident was not reasonably foreseeable, and it was not sound public policy to impose liability on the wireless company under the circumstances. *Id.*, at 475. The appellate court explained as follows:

Simply because an action may have some degree of foreseeability does not make it sound public policy to impose a duty. For example, many items may be used by a person while driving, thus

making the person less attentive to driving. It is foreseeable to some extent that there will be drivers who eat, apply make up, or look at a map while driving and that some of those drivers will be involved in car accidents because of the resulting distraction. However, it would be unreasonable to find it sound public policy to impose a duty on the restaurant or cosmetic manufacturer or map designer to prevent such accidents. It is the driver's responsibility to drive with due care. Similarly, Cingular cannot control what people do with the phones after they purchase them. To place a duty on Cingular to stop selling cellular phones because they might be involved in a car accident would be akin to making a car manufacturer stop selling otherwise safe cars because the car might be negligently used in such a way that it causes an accident.

*Id.,* at 478.

That a driver of a heavily laden tractor-trailer would divert his attention from the road in a situation where, as described in the Complaint,[2] his full attention was required is certainly possible. This alleged failure of the truck driver to operate the vehicle with due care for his own safety as well as the safety of others[3] cannot, however, be ascribed to a company that manufactures a communications device as use of the device without due care, while certainly possible, is not probable, the results which could not have been reasonably foreseen. As the Court held in *Kientz,* the duty owed by a product manufacturer "does not require him to guard against hazards apparent to the casual observer or to protect against injuries resulting from the user's own patently careless and improvident conduct." *Kientz, supra,* at 18.

Plaintiffs also argue that "risk creation" imposes a legal duty on Geologic and Xata. The North Carolina Supreme Court has held that "risk-creation behavior" only gives rise to a legal duty where "the risk is both unreasonable and foreseeable." *Estate of Mullis v. Monroe Oil Co., Inc.,* 349 N.C. 196, 505 S.E.2d 131, 137 (N.C.1998). Plaintiffs must allege and later show "additional factor or factors which would have enabled the vendors to foresee that harm was, in all likelihood, going to occur." *Id.* Thus, simply because a product is placed in the stream of commerce does not place a legal duty on the manufacturer for careless or improper use; rather the risk of harm has to be both unreasonable and foreseeable.

Plaintiffs citation of other authorities does not support their claim moving forward:

*Cassels v. Ford Motor Co.,* 10 N.C.App. 51, 178 S.E.2d 12 (N.C.Ct.App.1970) involved injuries caused by a defective drive shaft. No allegation is made in this case that the communications device was in any manner defective or that plaintiffs were directly injured due to a defect in this product.

*Toone v. Adams,* 262 N.C. 403, 137 S.E.2d 132 (N.C.1964) was not a products liability case, but involved defendant's incitement of third persons to harm the plaintiff.

*Adams v. Morris,* 584 S.W.2d 712 (Tex. 1979) involved a passenger who, after the action against the driver was resolved, was held liable for injuries to pedestrians. In that case, the passenger plaintiff actively distracted the driver and failed to keep a lookout at a time when he knew the driver was paying attention. The court there

---

**2.** "Camelia Buchanan slowed her vehicle in response to traffic and work zone hazards." Compl., at ¶ 22.

**3.** *See* Compl., at ¶ 25.

found that the passenger had the same duty of care as the driver when they were in a vehicle together.

*Driver v. Burlington Aviation, Inc.,* 110 N.C.App. 519, 430 S.E.2d 476 (N.C.Ct.App. 1993) involved injury that was attributable to incorrect information being provided in an airplane instruction manual concerning how to operate and maintain the aircraft. There is no allegation in this case that the communications device was defective or that the instructions that accompanied it were incorrect.

*Hairston v. Alexander Tank & Equip. Co.,* 311 S.E.2d 559 (N.C.1984) involved an automobile dealership that failed to tighten the lug nuts on the wheel of a new car that it sold. The wheel fell off, and the purchaser who was operating the vehicle was subsequently killed when he got out of the car and was hit by a negligent driver. The issue in that case was whether the car dealership's negligence "was superseded or excused by the subsequent negligence" of the driver who hit the purchaser. In relevant part, the Court held that "a defendant is not required to foresee events which are merely possible, but only those which are reasonably foreseeable." *Id.,* at 565.

*Isaacson v. Toyota Motor Sales, USA, Inc.,* 438 F.Supp. 1 (E.D.N.C.1976) involved a federal district court predicting what state law would be in the absence of state decision. The court predicted that the North Carolina Supreme Court would

> find that a manufacturer is under a duty to anticipate that certain vehicles will be involved in accidents and to design and manufacture vehicles which avoid subjecting the users to unreasonable risks of foreseeable injury.

*Id.,* at 5. Unlike *Isaacson,* defendants have pointed the court to binding state authority which defines the scope of a product manufacturer's duty. *See Kientz, supra.*

*Council v. Dickerson's Inc.,* 233 N.C. 472, 64 S.E.2d 551 (N.C.1951) concerns narrow circumstances under which the duty owed to the traveling public arises. The Court held that

> when the defendant undertook to perform the promised work under his contract with the State Highway and Public Works Commission, the positive legal duty devolved upon him to exercise ordinary care for the safety of the general public traveling over the road on which he was working.

*Id.,* at 553. In that case, the duty to the public arose because the defendant had a contract with the state to work on state highways. *Id.* There are no allegations of any legal relationship between plaintiffs and defendants Geologic and Xata.

*Dail v. Taylor,* 151 N.C. 284, 66 S.E. 135 (1909) involved exploding soda bottles that caused personal injury to the merchant who purchased the products when they exploded. The products in *Dail* contained latent defects, and the court held that where the seller knew or should have known of a latent defect that was likely to cause injury to the buyer, failure to exercise ordinary care to prevent such injury was a breach of duty owed to the buyer. The action before this court does not involve latent defects.

*Morgan v. Cavalier Acquisition Corp.,* 111 N.C.App. 520, 432 S.E.2d 915 (1993) involved a vending machine that tipped over and fell on a 17–year–old student, killing him. His estate sued for product liability, alleging that the vending machine had "latent defects" and that the manufacturer failed "to give notice of danger." *Id.,* at 527–28, 432 S.E.2d 915. There is no allegation in this case of "latent defect" or failure to warn. Plaintiffs contention is that these defendants should be held liable for designing and selling a product that "distracted" Mr. Jett while he was driving.

*Mozingo v. Pitt County Memorial Hosp.*, 101 N.C.App. 578, 400 S.E.2d 747 (N.C.Ct.App.1991) is a medical malpractice decision. Such decision provides that the existence of a legal duty is a question of law for the Court to decide, unless there is a factual dispute. *Id.*, at 753. All the facts alleged have been considered in a manner most favorable to plaintiffs, making the issue a question of law in this case.

*Olympic Products Co., A Div. of Cone Mills Corp. v. Roof Systems, Inc.*, 88 N.C.App. 315, 363 S.E.2d 367 (N.C.Ct.App. 1988) is a construction case and did not involve allegations of products liability. In that case, the appellate court addressed the existence of a duty in tort law, holding that

> [a]ctionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law.

*Id.*, at 322, 363 S.E.2d 367 (citation omitted). The court goes on to state the well settled law of North Carolina that privity of contract is not required to recover against a person who undertakes service for another, but then injures a third party. *Id.* The appellate court explained

> [t]his duty to protect third parties from harm arises under circumstances where the party is in a position so that "anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other."

*Id.*, at 372 (citation omitted). As discussed earlier, however, a manufacturer only bears

> responsibility for consequences which are probable, and which could reasonably have been foreseen, according to ordinary and usual experience, but not

for consequences which are merely possible according to occasional experience. *Kientz v. Carlton*, 245 N.C. 236, 96 S.E.2d 14, 18 (N.C.1957). The distinction to be drawn between *Kientz* and *Olympic* may best be described by example: under *Olympic*, a construction company may well be liable to a pedestrian who is injured when a improperly constructed garden wall gives way; however, the same construction company would not be liable where the owner put a properly constructed wall to an unintended and unforeseeable use, such as a retaining wall for a swimming pool, and such wall gives way injuring a pedestrian.

*Simmons v. NC Department of Transp.*, 128 N.C.App. 402, 496 S.E.2d 790 (1998) concerns an injury sustained by a person who worked for the Department of Transportation. There are no products liability issues in such action.

### E. Conclusion

The court has carefully considered all the arguments and authorities cited and can only conclude that North Carolina does not recognize a products liability cause of action under the facts alleged. When

> sitting in diversity, a federal court should not create or expand a State's public policy. Moreover, absent a strong countervailing federal interest, the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law.

*Time Warner Entertainment v. Carteret–Craven Electric Membership Corp.*, 506 F.3d 304, 314 (4th Cir.2007) (citations and internal quotations omitted). Whether North Carolina should expand its products liability or tort law to provide the protection to the traveling public advocated by plaintiffs is a matter left soundly to the

state legislature or state courts. The undersigned's job is limited to review statutory and case law to determine whether such cause of action exists.

For the reasons discussed above, the undersigned cannot find that a products liability cause of action exists under North Carolina law based on the facts alleged, making such insufficient under Rule 12(b)(6). Plaintiffs have not alleged facts which, when taken as true, could plausibly support a finding that Geologic and Xata owed them a legal duty of care or that such defendants proximately caused them harm under current North Carolina law.

Finally, Geologic Solutions, Inc.'s and Xata Corporation's Motion to Dismiss Cross–Claims for Contribution and Indemnification Asserted Against Them by PeopLease Corporation (# 39) and Rule 12(b)(6) Motion to Dismiss the Cross–Claims for Contribution and Indemnification Asserted Against Them By the Domtar Defendants (# 60) should also be allowed inasmuch as the existence and viability of the crossclaims is dependent on the existence and viability of plaintiffs' Fourteenth Cause of Action.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that Geologic Solutions, Inc.'s and Xata Corporation's Motion to Dismiss (# 25), Motion to Dismiss Cross–Claims for Contribution and Indemnification Asserted Against Them by PeopLease Corporation (# 39), and Rule 12(b)(6) Motion to Dismiss the Cross–Claims for Contribution and Indemnification Asserted Against Them By the Domtar Defendants (# 60) be **ALLOWED**.

### *Time for Objections*

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14) days of** service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).